UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: THE BABCOCK & WILCOX                CIVIL ACTION
COMPANY, ET AL.
                                           NO. 06-9964

CAPLIN & DRYSDALE, CHARTERED               SECTION: R(5)

VERSUS

THE UNITED STATES TRUSTEE'S
OFFICE, REGION 5


**ORDER AND REASONS**

Appellant Caplin & Drysdale appeals the bankruptcy court's March 19, 2003 Order granting the Limited Objection of the United States Trustee to Caplin & Drysdale's Seventh Interim Application for Allowance of Professional Fees and Reimbursement of Expenses. Caplin & Drysdale also appeals the bankruptcy court's July 27, 2006 Order denying its motion to reconsider the March 19, 2003 Order and approving the remainder of Caplin & Drysdale's fees and expenses. For the following reasons, the Court AFFIRMS the bankruptcy judge's decisions.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case, which amounts to a dispute over appellant's fees and costs, arises from The Babcock & Wilcox Company's Chapter 11 bankruptcy, initially filed on February 22, 2000 in the Bankruptcy Court for the Eastern District of Louisiana. By Order dated March 16, 2000, the bankruptcy court approved the appointment of the law firm of Caplin & Drysdale, Chartered to serve as national counsel for the Asbestos Claimants' Committee under 11 U.S.C. § 1103(a). (Bankr. Rec. Doc. 182). The bankruptcy court ordered that Caplin & Drysdale "be allowed compensation and reimbursement for its expenses in accordance with Sections 330(a) and 331 of the Bankruptcy Code." (*Id.*). Section 330(a) permits the court to award "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a). Section 331 sets forth the manner in which counsel appointed under Section 1103 of the Bankruptcy Code may seek interim compensation. 11 U.S.C. § 331.

At issue are $135,685.80 and $33,266.23 of disallowed travel time compensation and first class airfare expenses, respectively, resulting from two orders issued by the bankruptcy court. The first, issued on March 19, 2003, denied Caplin & Drysdale's reimbursement requests for first class airfare and for travel

time for "non-working status." (Bankr. Rec. Doc. 4055). The second, issued on July 27, 2006, denied Caplin & Drysdale's motion for reconsideration. (Appellant's Ex. 37). Both orders are up for review. Appellant Caplin & Drysdale requests compensation at its full hourly rates for nonproductive travel time and reimbursement for the cost of first class airfare over the course of this case. In total, the bankruptcy court awarded Caplin & Drysdale $5,488,113.01 for legal services and $738,605.26 for expense reimbursements during the entirety of the Babcock & Wilcox litigation. (*Id.*). This sum included fees for Caplin & Drysdale's non-working travel time, which was calculated at 50 percent of its hourly rates, and reimbursements for coach class airfare costs. (Appellant's Ex. 27).

On July 28, 2006, Caplin & Drysdale timely appealed the bankruptcy court's March 19, 2003 and July 27, 2006 Orders, effectively asking this Court to: (1) reverse the bankruptcy court's determination that Caplin & Drysdale was not entitled to reimbursement for Babcock & Wilcox-related "travel time" at its full hourly rates; and (2) reverse the bankruptcy court's determination that Caplin & Drysdale was not entitled to reimbursement for the full cost of first-class airfare for Babcock & Wilcox-related travel.

**II.  LEGAL STANDARD**

A bankruptcy court's award of attorney's fees is reviewed for abuse of discretion.  *See In re Cahill,* 428 F.3d 536, 539 (5th Cir. 2005).  "An abuse of discretion occurs where the bankruptcy court (1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous."  *Id.*  The district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *In re Quinlivan*, 434 F.3d 314, 318 (5th Cir. 2005) (citing *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000)).

**III. DISCUSSION**

    **A.  Fees for Non-Working Travel Time**

        *1.  Legal Standard*

Section 330(a) of the Bankruptcy Code sets forth the proper legal standard for compensation of professionals appointed under Section 1103 of the Bankruptcy Code, as appellant was in this matter.  It states, in relevant part:

> (a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to . . . a professional person employed under section 327 or 1103–

>      (A) reasonable compensation for actual, necessary
>      services rendered by the trustee, examiner,
>      professional person, or attorney and by any
>      paraprofessional person employed by any such
>      person[.]

11 U.S.C. § 330(a).  Section 330(a) also gives the bankruptcy court the authority, upon motion or *sua sponte*, to "award compensation that is less than the amount of compensation that is requested."  *Id.* at § 330(a)(2).  Under Section 330(a)(3), "in determining the amount of reasonable compensation to be awarded to . . . [a] professional person," bankruptcy courts "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors," including, but not limited to:

>      (A) the time spent on such services;
>      (B) the rates charged for such services;
>      (C) whether the services were necessary to the
>      administration of, or beneficial at the time at which
>      the service was rendered toward the completion of, a
>      case under this title;
>      (D) whether the services were performed within a
>      reasonable amount of time commensurate with the
>      complexity, importance, and nature of the problem,
>      issue, or task addressed;
>      (E) with respect to a professional person, whether
>      the person is board certified or otherwise has
>      demonstrated skill and experience in the bankruptcy
>      field; and
>      (F) whether the compensation is reasonable based on
>      the customary compensation charged by comparably
>      skilled practitioners in cases other than cases under
>      this title.

*Id.* at § 330(a)(3).  Further, bankruptcy courts "shall not allow

compensation for "services that were not (I) reasonably likely to benefit the debtor's estate; or (II) necessary to the administration of the case." *Id.* at § 330(a)(4)(A).

In calculating "reasonable" attorney's fees under Section 330(a), "[t]he Fifth Circuit has traditionally used the lodestar method. A court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community." *Cahill*, 428 F.3d at 539-40. The burden of proving the "prevailing community rate" is on the party requesting the compensation. *See In re El Paso Refinery, L.P.*, 257 B.R. 809, 833 (Bankr. W.D. Tex. 2000). After the lodestar has been determined, a court can then "adjust the lodestar up or down based on the factors contained in Section 330 and its consideration of the twelve factors listed" in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[1] *Id.* at 540 (citing *In re Fender*, 12 F.3d 480, 487

---

[1] The twelve Johnson factors are:

> (1) the time and labor required;
> (2) the novelty and difficulty of the questions;
> (3) the skill requisite to perform the legal service properly;
> (4) the preclusion of other employment by the attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;

(5th Cir. 1994)).  A bankruptcy court has "considerable discretion" in applying the factors listed in Section 330 and *Johnson*.  *Cahill*, 428 F.3d at 540.

   *2.   Analysis*

   Caplin & Drysdale contends that the bankruptcy court's decisions concerning its fees for nonproductive travel time misapply the law on compensation for bankruptcy professionals. Specifically, Caplin & Drysdale asserts that the bankruptcy judge erred in calculating the lodestar by determining the "prevailing community rate" for nonproductive travel time as 50 percent of Caplin & Drysdale's regular hourly rates.  Caplin & Drysdale argues that the proper legal method for determining the amount to be compensated for travel time is by reference to the firm's billing practices for comparable services in non-bankruptcy cases.  At the bankruptcy court's March 12, 2003 evidentiary hearing, Elihu Inselbuch, who was Caplin & Drysdale's lead partner in the Babcock & Wilcox litigation, testified that, as

---

        (8) the amount involved and the results obtained;
        (9) the experience, reputation and ability of the attorneys;
        (10) the "undesirability" of the case;
        (11) the nature and length of the professional relationship with the client; and
        (12) awards in similar cases.

*Johnson*, 488 F.2d at 719.

set forth in the firm's standard fee agreement with all of its non-bankruptcy clients, the firm bills its clients for all attorney travel time at its full hourly rates, regardless of whether the attorney travel time is spent working on client matters.  (Appellant's Ex. 1, at 18-19; *see also* Appellant's Ex. 11, Ex. B).  Inselbuch stated that, of Caplin & Drysdale's clients in its non-bankruptcy practice areas, "I know of no instance where the issue of travel time was in a dispute." (Appellant's Ex. 1, at 19).  Inselbuch further testified: "It is my general understanding . . . that as a general proposition, law firms create their billing rates on the assumption that they will bill clients for travel time at full rates and be paid for them." (*Id.* at 23).  Caplin & Drysdale relies on Inselbuch's testimony to show that billing the Babcock & Wilcox estate its full hourly rates for all of its travel time was reasonable based on its customary rates in non-bankruptcy cases.  It therefore contends that the bankruptcy court's award of attorney's fees in this matter was an abuse of discretion in light of the comparability factor set forth in Section 330(a)(3)(F).

     The bankruptcy court, after considering Inselbuch's testimony and the record as a whole, decided at the March 12, 2003 evidentiary hearing to deny Caplin & Drysdale's request for compensation equivalent to its full hourly rates for its travel

time. (*Id.* at 79). This Court finds no abuse of discretion in the bankruptcy court's ruling. "It is a fee applicant's burden to prove the reasonableness and necessity of fees requested in the fee application." *In re Teraforce Tech. Corp.*, 347 B.R. 838, 847 (Bankr. N.D. Tex. 2006) (citing *In re Evangeline Ref. Co.*, 890 F.2d 1312, 1326 (5th Cir. 1989)). Based on the evidence presented at the March 12, 2003 evidentiary hearing, the bankruptcy court could properly conclude that Caplin & Drysdale failed to carry its burden under Section 330(a) to show that compensation for travel time at its full hourly rates was reasonable.

The only undisputed evidence offered by Caplin & Drysdale at the evidentiary hearing was that *its* customary practice was to bill clients in non-bankruptcy matters for nonproductive travel time at its full hourly rates. This is insufficient to satisfy the comparability factor set forth in Section 330(a)(3)(F). Under that provision, "the court, in determining a lodestar amount, must consider cost of comparable services. This means that an attorney from New York City is entitled to compensation at rates prevailing in the New York City market." *In re Mirant Corp.*, 354 B.R. 113, 143 (Bankr. N.D. Tex. 2006). Significantly, Caplin & Drysdale failed to establish at the evidentiary hearing that the customary compensation for nonproductive travel time in

the New York City or Washington, D.C. markets, where the Caplin & Drysdale attorneys involved in the Babcock & Wilcox litigation were located, was equivalent to a firm's full hourly rates.

Inselbuch stated that it was his "general understanding" that other firms in New York City created their billing rates "on the assumption that they will bill clients for travel time at full rates and be paid for them," but he established no foundation that his purported "understanding" was based on comparable firms. (Appellant's Ex. 1, at 23). He did not even identify any other comparable firms, much less produce evidence of what they billed for nonproductive travel time. In fact, on cross-examination, Inselbuch conceded that other highly qualified firms from Caplin & Drysdale's New York City and Washington, D.C. markets involved in the Babcock & Wilcox litigation had not sought compensation for nonproductive travel time at their full hourly rates. (*Id.* at 58-59). These firms included two from the same markets as Caplin & Drysdale that Caplin & Drysdale had retained for assistance in the Babcock & Wilcox proceedings, specifically Tersigni Consulting Group and Gilbert & Heintz. (*Id.* at 44-45). Presumably, these firms were aware that they were entitled under Section 330(a) to charge the same rates in this proceeding that they charge for comparable non-bankruptcy work. It is therefore significant that these firms did not bill

the Babcock & Wilcox estate for nonproductive travel time at their full hourly rates.

Inselbuch's testimony thus was, at best, inconclusive as to the comparability of customary billing practices at other firms in Caplin & Drysdale's markets with his own. The bankruptcy court was entitled to discount the weight of his testimony since it was self-interested and without foundation or evidentiary support. Accordingly, Caplin & Drysdale failed to establish through undisputed, credible evidence that its policy of charging full hourly rates for nonproductive travel time reflected market practices. *See Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 258 (3d Cir. 1995) ("We disapprove of any approach that allows a court confronted with undisputed, credible, contrary evidence of market practices in the record to rely solely on its own judgment . . . .") (quoting *In re Busy Beaver Bldg. Ctrs.*, 19 F.3d 833, 848 (3d Cir. 1994); *see also Cahill*, 428 F.3d at 540 (indicating that lodestar includes consideration of hourly rate charged by comparable professionals for same type of work in relevant community); *In re Hillsborough Holdings Corp.*, 127 F.3d 1398, 1404 (11th Cir. 1997) ("the best approach to achieving the goal of full - but not excessive - compensation is to rely on the market") (internal citations omitted). In reversing a bankruptcy court's decision in a similar dispute over

fees for travel time, the District of Connecticut stated:

> In awarding these firms their full hourly rates for nonproductive travel time, however, the bankruptcy court failed to consider whether other attorneys in the relevant market customarily charge their non-bankruptcy clients their full hourly legal service rate for nonproductive travel time, and only considered the practices of the applicant attorneys. In fact, there was no finding with respect to the relevant legal market, nor was there any record contained in the application or established at the hearing with respect to travel billing practices in that market. . . .  Section 330 does not authorize the bankruptcy court to award attorney fees for services otherwise not borne by private non-bankruptcy clients.

*In re Raytech Corp.*, 241 B.R. 785, 789 (D. Conn. 1999).  Absent evidence of the customary billing practices for nonproductive travel time in the relevant legal market, the court there vacated the bankruptcy court's award of full hourly rates for this category of time.  *Id.* at 790.

Here, the bankruptcy court provided Caplin & Drysdale an opportunity to present evidence as to the comparable billing practices of firms in its markets at the March 12, 2003 evidentiary hearing.  It is for this reason that *Hillsborough Holdings Corp.*, on which appellant relies, is inapposite to this matter.  In *Hillsborough Holdings Corp.*, the Eleventh Circuit held that a bankruptcy court "may not arbitrarily exclude by fiat whole categories of otherwise reimbursable expenses . . . ." 127 F.3d at 1404.  There, the court decided at the outset of the

bankruptcy proceedings that several categories of expenses were non-compensable because they were "overhead" costs, without considering any evidence as to the usual billing practices of the attorneys involved or those of other comparable practitioners. *Id.* at 1401-02.  Here, the bankruptcy court listened to evidence on the disputed issues before reaching a decision, so *In re Hillsborough Holdings Corp.* is inapplicable to the facts at hand.

The bankruptcy court's decision is further supported by the decisions of other courts, in addition to the District of Connecticut, that have refused to award compensation for nonproductive travel time equivalent to a firm's full hourly rates.  *See, e.g., In re Teraforce Tech. Corp.*, 347 B.R. at 860; *In re Caribbean Const. Servs., Inc.*, 283 B.R. 388, 395 (Bankr. D.V.I. 2002); *In re Anderson Grain Corp.*, 222 B.R. 528, 532 (Bankr. N.D. Tex. 1998); *In re Automobile Warranty Corp.*, 138 B.R. 72, 78 (Bankr. D. Colo. 1991); *In re Landing, Inc.*, 122 B.R. 701, 704 (Bankr. N.D. Ohio 1990); *Matter of Envtl. Waste Control*, 122 B.R. 341, 347 (Bankr. N.D. Ind. 1990).  In fact, each of these courts compensated the bankruptcy professionals at an amount equivalent to 50 percent of their respective hourly rates, which is the same figure employed by the bankruptcy court in this case.  While it is without question that other courts have opted for a different rate of compensation for nonproductive travel

time, including 100 percent, 75 percent, and 0 percent of a firm's usual billing rate, this simply reflects the individualized nature of the inquiry and the substantial discretion vested in bankruptcy courts to award fees for nonproductive travel time.  *See, e.g., In re Zepecki*, 224 B.R. 907, 912 (Bankr. E.D. Ark. 1998) (awarding 100 percent); *In re C & J Oil Co., Inc.*, 81 B.R. 398, 404 (Bankr. W.D. Va. 1987) (awarding 75 percent); *In re Seneca Oil Co.*, 65 B.R. 902, 909 (Bankr. W.D. Okla. 1986) (awarding 0 percent).  Further, it has been observed that, of the courts that do not allow full hourly rate compensation for travel time, a majority authorize compensation for this time at 50 percent of the professional's hourly rate.  *In re Caribbean Const. Servs., Inc.*, 283 B.R. at 395.[2]  Moreover, to the extent that the bankruptcy court looked at the fees sought by comparable professionals in the same bankruptcy proceeding, none of whom, according to the United

---

[2] While not dispositive of this issue, the Court takes note of Fifth Circuit decisions that have reduced the award of attorney's fees for travel time in civil rights cases, which, like bankruptcy cases, employ the lodestar method to calculate fees.  *See, e.g., Watkins v. Fordice*, 7 F.3d 453, 459 (5th Cir. 1993) (concluding that district court did not abuse its discretion by discounting hourly rate billed for travel time); *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993) (same); *see also Major v. Treen*, 700 F.Supp. 1422, 1432 (E.D. La. 1988) (awarding 50 percent of hourly fees for nonworking and working travel time).

States Trustee requested compensation for travel time at their full hourly rates, the court did not abuse its discretion. *See In re Commercial Financial Services, Inc.*, 427 F.3d 804, 815 (10th Cir. 2005) ("We also hold the bankruptcy court appropriately calculated a reasonable fee by looking to the rates charged by other financial advisers working in the same proceedings.").

For all of the foregoing reasons, the Court concludes that the bankruptcy court did not abuse its discretion by awarding Caplin & Drysdale compensation for its nonproductive travel time in the Babcock & Wilcox proceedings in an amount equivalent to 50 percent of its usual hourly rates.

  B. *Reimbursement for Airfare*

Caplin & Drysdale next contends that the bankruptcy judge erred when it denied the firm's application for reimbursement of first-class airfare costs incurred during the Babcock & Wilcox proceedings. Caplin & Drysdale argues that the bankruptcy court abused its discretion by ignoring evidence presented at the March 12, 2003 hearing showing that flying first class was necessary for Caplin & Drysdale to provide proper representation of its client in this matter. Specifically, at the hearing, Inselbuch testified that Caplin & Drysdale purchased first-class airline tickets because of the scarcity of daily flights to New Orleans

from New York City and Washington, D.C., the certainty of receiving a seat on one of those planes, and the greater likelihood that the firm's attorneys could perform quality work in the more spacious first-class seating area. (Appellant's Ex. 1, at 23-25). Inselbuch also stated that flying first class enabled Caplin & Drysdale attorneys to spend less time waiting in line to board their planes. (*Id.* at 24).

Under Section 330(a)(1)(B) of the Bankruptcy Code, a professional person employed under Section 1103 of the Code may receive from the court "reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(B). It is incumbent upon the party seeking reimbursement to prove that its expenses were "necessary" under Section 330(a). *See, e.g.*, *In re Evangeline Ref. Co.*, 890 F.2d at 1326 ("The applicant bears the burden of proof in a fee application case."). At the conclusion of the March 12, 2003 evidentiary hearing, the bankruptcy court indicated that while it understood Caplin & Drysdale's proffered reasons for flying first class, it nevertheless was unconvinced that flying first class was a necessary expense for the Babcock & Wilcox bankruptcy proceedings. (*Id.* at 79; *see also id.* at 76 (noting that there had not been any "emergency situations that couldn't be handled by local counsel" in these proceedings)). The bankruptcy court then ruled that Caplin & Drysdale would be

reimbursed only for the cost of coach-class airfare between New Orleans and the firm's offices in New York City and Washington, D.C.  (Appellant's Ex. 1, at 79).

On this record, the Court finds that the bankruptcy court did not abuse its discretion in deciding to award Caplin & Drysdale reimbursement only for the costs of coach-class airfare incurred during the Babcock & Wilcox bankruptcy.  During the hearing, Inselbuch conceded that Caplin & Drysdale's policy was to fly first class whenever first-class seats were available, regardless of the number of daily flights to a particular city or whether coach-class seats were also available on the same flight. (*Id.* at 45-46).  Additionally, while Inselbuch attempted to show that flying first-class actually saved money in the aggregate for the Babcock & Wilcox estate, this testimony was based on the premise that Caplin & Drysdale attorneys can work while sitting in first class, but not while sitting in coach class.  (*Id.* at 24).  However, Inselbuch did not provide evidence establishing that, in fact, Caplin & Drysdale are ultimately nonproductive when they sit in coach-class seats or that they are more productive when sitting in first class.  Thus, at most, Caplin & Drysdale established only that it was more convenient for its attorneys to fly first class, and that their attorneys were theoretically more productive when flying first class.  It did

17

not show that the extra expense of flying first class was necessary to the proper representation of the claimants in this matter.

Furthermore, the cases cited by Caplin & Drysdale in support of its expense request do not stand for the proposition that a bankruptcy court abuses its discretion by denying a request for reimbursement of first-class airfare for out-of-town counsel. The *In re NBI, Inc.* decision, 129 B.R. 212, 231 (Bankr. D. Colo. 1991), includes an exhibit that states first-class airfare "can be considered acceptable" for flights of two hours or more, but the opinion itself is silent on the issue.  The bankruptcy court in *In re Pacific Exp., Inc.*, actually *reduced* the final travel expense requests submitted by out-of-town counsel because "such expenses were simply not justified."  56 B.R. 859, 865 (Bankr. E.D. Cal. 1985).  Appellant therefore has not pointed to, and the Court cannot find, any case that finds an abuse of discretion when a bankruptcy court denies a bankruptcy professional's request for reimbursement under Section 330(a) for first-class airfare.  By contrast, as appellee notes, the Local Rules of the United States Bankruptcy Court for the District of Columbia and the Local Rules of the Bankruptcy Court for the Southern District of New York both specifically prohibit reimbursement for first-class airfare expenses.  While the restrictions of other

bankruptcy courts do not mandate a similar outcome in this case, they further compel this Court's conclusion that the bankruptcy court here did not abuse its discretion in determining that Caplin & Drysdale's first-class airfare expenses were unnecessary under Section 330(a).

**IV. CONCLUSION**

For the reasons stated above, the Court AFFIRMS the bankruptcy judge's March 19, 2003 and July 27, 2006 Orders.

New Orleans, Louisiana, this __15th__ day of March, 2007.

_____*Sarah Vance*_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE